**In re the Marriage of Wayne P. ROSENTRATER, Appellant–Petitioner,**

v.

**Marilyn ROSENTRATER, Appellee–Respondent.**

No. 45A03–9807–CV–303.

Court of Appeals of Indiana.

April 12, 1999.

Jennifer Kalas, Ruman, Clements, Tobin & Holub, P.C., Hammond, Indiana, Attorney for Appellant.

Larry D. Stassin, Sachs & Hess, P.C., Hammond, Indiana, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge

Appellant Wayne P. Rosentrater ("Wayne") appeals from an order issued by the trial court in the matter of the dissolution of his marriage to Marilyn Rosentrater ("Marilyn"). Our review of the record reveals these relevant facts:

Wayne and Marilyn were married on May 6, 1966. During the marriage Wayne had various jobs, including employment at Ford Motor Company, where he acquired a savings and stock investment plan (the "Ford Plan"). Two children were born of the marriage, but they were both adults by the time Wayne filed his Verified Petition for Dissolution of Marriage (the "Verified Petition") on June 11, 1993. Although he filed the Verified Petition in 1993, the final hearing in the matter did not occur until October 3, 1996. On that date, the trial court ordered the parties to file their respective Findings of Fact and Conclusions of Law, which Wayne did on November 4, 1996, and Marilyn did on November 15, 1996. In addition to memorializing the parties' stipulations valuing marital property, such as the Ford Plan at issue, the parties agreed, in their respective Proposed Findings of Fact and Conclusions of Law, that for purposes of property division, the valuation date for all the assets would be June 11, 1993, the date Wayne had filed his Verified Petition. The Decree of Dissolution was entered by the trial court on February 6, 1998, and reads in pertinent part:

> The Court having heard and concluded all evidence in this matter, and having received proposed findings of fact and conclusions of law from both parties, and having reviewed the evidence and proposed findings and conclusions as submitted, and being duly advised in the premises, now enters the following findings of fact, conclusions of law and order:
> [* * *]

7. During testimony in this matter, the parties stipulated to the following:
[* * *]

> c. The valuation of the following assets and debts are agreed as follows:
[* * *]

Wayne's Ford Savings and Stock Investment [$]61,898.42

On March 6, 1998, Marilyn filed a pleading titled, "Motion to Correct Errors and/or Motion to Correct Scrivener's Error and Memorandum in Support of Motion to Correct Errors and/or Motion to Correct Scrivener's Error." On that same date, the trial court entered the following Order granting Marilyn's motion:

> This Court, having reviewed the Respondent's Motion to Correct Errors and/or Motion to Correct Scrivener's Errors and Memorandum in Support thereof and being duly advised in the premises, hereby finds that scrivener[']s errors have, in fact, occurred and the Decree of Dissolution granted February 6, 1998, is hereby corrected as follows:
>
> " 'That in order to effectuate a true 60% division of all of the assets, the increased value of the stocks must be included as part of the marital pot calculation. The Husband shall provide to the Wife documentation as to the value of each and every stock awarded to him, as of the date of the Decree of Dissolution (to-wit: February 6, 1998). Such information shall, within thirty days, be tendered to the Wife, with a check equal to 60% of said increase in value, after deduction to the Husband for any properly documented post-filing contributions.'
>
> [* * *].
>
> SO ORDERED this 6th day of March, 1998, *nunc pro tunc* to February 6, 1998."

Wayne filed a "Response to Motion to Correct Errors and/or Motion to Correct Scrivener's Error" on March 16, 1998, but the record does not contain any ruling by the court other than the March 6 *nunc pro tunc* entry. It is from that entry that Wayne appeals.

Wayne raises several issues in his brief to this court, which can be summarized and restated as: whether it was error for the trial court to grant Marilyn's motion, when the error to be corrected was not mathematical or an omission, but rather one of a substantive nature.

Marilyn's Memorandum in support of her "Motion to Correct Errors and/or Motion to Correct Scrivener's Error" asserts,

> "a scrivener's error was committed by former counsel of the Respondent [Marilyn].... That scrivener's error was in Wife's proposed findings of fact and resulted in a certain portion of marital property being unintentionally excluded from consideration. To ignore a significant portion of an asset is unfair and greatly impacts upon the distribution ordered by this Court, after its careful deliberation of the facts and circumstances." (R. 108).

To decide this appeal on its merits, we must first examine whether, procedurally, Marilyn's motion was indeed a "Motion to Correct Error," or a "Motion to Correct Scrivener's Error," each of which would be governed by different trial rules.

A Motion to Correct Error is a creature of Ind. Trial Rule 59. Section (A)(1) of T.R. 59 provides that "[a] Motion to Correct Error is not a prerequisite for appeal, except when a party seeks to address ... [n]ewly discovered material evidence ... capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial...." T.R. 59(D) and (E) set forth the errors properly raised in such a motion, as well as the procedural possibility of opposition to the motion:

> Where used, a Motion to Correct Error need only address those errors found in Trial Rule 59(A)(1) and (2). Any error raised however shall be stated in specific rather than general terms and shall be accompanied by a statement of facts and grounds upon which the error is based. The error claimed is not required to be stated under, or in the language of the bases for the motion allowed by this rule, by statute, or by other law.

Following the filing of a motion to correct error, a party who opposes the motion may file a statement in opposition to the motion to correct error not later than fifteen (15) days after service of the motion. The statement in opposition may assert grounds which show that the final judgment or appealable final order should remain unchanged, or the statement in opposition may present other grounds which show that the party filing the statement in opposition is entitled to other relief.

Marilyn's motion does not aver that the Ford Plan or any increase in its value was "[n]ewly discovered material evidence ... capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial," as contemplated by T.R. 59(A)(1). In fact, she not only clearly knew of the existence of the Ford Plan, but moreover submitted proposed findings of fact to the trial court as to its value and to the valuation date upon which the parties had agreed.

If Marilyn's motion was a "Motion to Correct Error" as contemplated by T.R. 59, Wayne was entitled to fifteen days in which to respond to it, under the plain language of T.R. 59(E). In fact, he did timely file a response, on March 19, but at that point, the court had already summarily granted Marilyn's motion, and the record shows no subsequent reconsideration of the matter. The court's entry of judgment on the same day the motion was filed shows that the court treated the motion only as one to correct a scrivener's error, and not as a Motion to Correct Errors as contemplated by T.R. 59.

Thus, Marilyn's motion was tantamount to a T.R. 60(A) motion, seeking relief from judgment due to a clerical mistake. This court has held,

> "The office of a T.R. 60(A) motion is to correct 'clerical mistakes' and 'errors therein arising from oversight and omission.' Clerical errors and mechanical matters involved in making computations are included in this area. A T.R. 60(A) motion is not to be used for the purpose of correcting errors of substance."

*First Bank of Madison v. Bank of Versailles,* 451 N.E.2d 79, 81 (Ind.Ct.App.1983), *trans.*

*denied* (quoting 4 HARVEY & TOWNSEND, INDIANA PRACTICE, §§ 60.3, 205). A "clerical error" has been defined as a mistake by a clerk, counsel, judge or printer which is not a result of judicial function and cannot reasonably be attributed to the exercise of judicial consideration or discretion. *Sarna v. Norcen Bank*, 530 N.E.2d 113, 115 (Ind.Ct.App.1988), *reh'g denied, trans. denied* (citing *Alamo Irr. Co. v. U.S.*, 81 Nev. 390, 404 P.2d 5 (1965)). The purpose of T.R. 60(A) is to recognize that "in the case of clearly demonstrable mechanical errors the interests of fairness outweigh the interests of finality which attend the prior adjudication. On the other hand, where the 'mistake' is one of substance the finality principle controls." *Id.* (internal cites omitted).

 Wayne argues, correctly, that the error in question is more properly characterized as one of substance than as one which is "clerical." The burden of producing evidence concerning the valuation of the assets lies with the parties to the proceedings. *In Re the Marriage of Lewis*, 638 N.E.2d 859, 860 (Ind.Ct.App.1994). The only evidence before the court of the value of the Ford Plan was that submitted by the parties in their respective proposed findings of fact and conclusions of law—*i.e.*, $61,898.42. Marilyn's argument in response to Wayne's appeal is that she "raised the issue" of the increased value of the Ford Plan at the final dissolution hearing. She was asked by Wayne's counsel, "Is it true for the purpose of this case you are valuing your marital assets as of June of 1993?" She responded, "Yes. Except for accruals on accounts." This excerpt of oral testimony, however, does not constitute "evidence" as to the *value* of the Ford Plan. At no time did either party submit to the court any evidence as to accrual in the value of the Ford Plan; Marilyn had her opportunity to do so both in her proposed findings of fact and conclusions of law, and at the final dissolution hearing. The trial court cannot enter a new judgment based on evidence not before

it; nor can it reopen a case using an alleged scrivener's error as its basis for so doing.

Remanded with instructions to reinstate that portion of the trial court's Decree of Dissolution entered on February 6, 1998, which lists the value of the Ford Plan as $61,898.42.[1]

RUCKER, J., and DARDEN, J., concur.

---

1. Marilyn's "Motion to Correct Errors and/or Motion to Correct Scrivener's Error" also prayed for the trial court to "correct the mathematical calculations relating to the award of rehabilitative maintenance such that the total award of rehabilitative maintenance and the termination date of such payments are consistent and mathematically correct." (R. 107). Although Wayne addressed that prayer in his "Response" to Marilyn's motion, he did not raise the court's grant of it in his brief on appeal. Accordingly, we do not address it in this decision.