

ATTORNEY FOR APPELLANTS

Douglas K. Briody
Law Office of Doug Briody
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Eric C. Welch
E. Phillip Gregg, Jr.
Welch & Company, LLC
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William C. Elliott and
Mary Kay Elliott,

*Appellants/Cross-Appellees-Defendants,*

v.

Dyck O'Neal, Inc., Successor in
interest to Fifth Third Mortgage
Company,

*Appellee/Cross-Appellant-Plaintiff.*

November 13, 2015

Court of Appeals Case No.
82A05-1411-MF-518

Appeal from the Vanderburgh
Superior Court

Lower Court Cause No.
82D03-0701-MF-185

The Honorable Robert J. Tornatta,
Judge

**Pyle, Judge.**

## Statement of the Case

[1]  This appeal stems from an *in rem* mortgage foreclosure default judgment against

William C. Elliott ("William") and Mary Kay Elliott ("Mary Kay")

(collectively "the Elliotts") and post-judgment proceeding supplemental—

which was initiated by Dyck O'Neal, Inc. ("Dyck O'Neal") as successor in interest to Fifth Third Mortgage Company ("Fifth Third")—to collect on the deficiency from that *in rem* foreclosure judgment. After the trial court entered a garnishment order for the deficiency, the Elliotts, who were not represented by counsel, agreed to pay and began paying $50.00 per week toward the foreclosure deficiency. More than four years later, the Elliotts, then represented by counsel, filed a motion for a refund for the money paid toward the deficiency, arguing that the foreclosure order included only an *in rem* judgment against them. Thereafter, Dyck O'Neal filed a motion to amend the foreclosure order to add an *in personam* judgment. The trial court denied both motions.

[2]     On appeal, the Elliotts argue that the trial court erred by denying its motion for refund from payments made pursuant to the garnishment order because the foreclosure order, which did not contain an *in personam* judgment, provided no basis for such payments. Dyck O'Neal cross-appeals the trial court's denial of its motion to amend the foreclosure judgment, arguing that the omission of an *in personam* judgment in the foreclosure order was a clerical error. Concluding that the trial court did not err by denying Dyck O'Neal's motion to amend the foreclosure judgment, we affirm the trial court's ruling on that motion. However, based on the specific facts in this case, including the lack of an *in personam* judgment in the original default foreclosure order, we conclude that the Elliotts are entitled to the equitable relief of a refund of their payments made pursuant to the garnishment order. Accordingly, we reverse the trial court's ruling on the Elliotts' motion for refund and remand to the trial court.

We affirm in part, reverse in part, and remand.

## Issues

1. Cross-Appeal Issue – Whether the trial court erred by denying Dyck O'Neal's motion to amend the foreclosure judgment.

2. Appeal Issue – Whether the trial court erred by denying the Elliotts' motion for refund.

## Facts[1]

In March 2002, the Elliotts borrowed $92,200.00 from Fifth Third to finance the purchase of a house located at 701 South Norman Avenue in Evansville, Indiana ("the Property"). To secure payment of the note, the Elliotts executed a thirty-year mortgage with a 6.75% interest rate in favor of Fifth Third. In their note, the Elliotts agreed to be "fully and personally obligated to keep all of the promises made in th[e] Note, including the promise to pay the full amount owed." (App. 14).

Three years later, in March 2005, the Elliotts filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. They reaffirmed the Property

---

[1] We note that, although both parties filed appendices, there are multiple pleadings from this foreclosure proceeding that the parties failed to include in their appendices. We direct the parties' attention to Appellate Rule 50(A)(2)(f), which provides that an appellate appendix should include "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]" *See also* Ind. App. R. 50(A)(3) (providing that the contents of an Appellee's Appendix is governed by the same rule that applies to an Appellant's Appendix). Additionally, because Dyck O'Neal failed to include a Summary of the Argument section in its brief, we direct its attention to Appellate Rule 46, which sets forth the arrangement and content requirements for appellate briefs.

in their bankruptcy proceeding, and their bankruptcy case was discharged and closed in June 2005.

[6]     On January 4, 2007, Fifth Third filed a "Complaint on Note and for Foreclosure on Mortgage" against the Elliotts. (App. 10). On January 29, 2007, Fifth Third filed an amended complaint, adding a subsequent mortgagee bank as a defendant. In Fifth Third's amended complaint, it sought the following relief:

> B.   Enter judgment, in favor of Plaintiff and against the Defendants, William C. Elliott and Mary Kay Elliott, in the sum of $87,525.99, plus reasonable attorneys' fee[s], and further interest and costs continually accumulating and all other costs herein, and all other relief proper in the premises;
>
> C.   Enter an Order foreclosing the Mortgage of Plaintiff on the above-described Real Estate and foreclosing and barring the Defendants' equity of redemption and interest in the Real Estate;
>
> D.   Enter an Order directing the sale of the above-described Real Estate in order to pay the Judgment of Plaintiff, at such sale the Plaintiff will be empowered to bid for the subject Real Estate or any part thereof with the indebtedness to be credited with any amount paid by Plaintiff; and if the proceeds from such sale are not sufficient to satisfy the Plaintiff's claim and debt herein found to be due and owing, for a further order directing the Sheriff to immediately levy upon the goods and chattels of the Defendants William C. Elliott and Mary Kay Elliott, until such Judgment is satisfied in full[.]

(App. 33-34). The Elliotts and the junior mortgagee did not file an answer.

On March 7, 2007, Fifth Third filed an "Application and Affidavit for Default Judgment" ("motion for default judgment"), an "Affidavit of Indebtedness and Non-Military Affidavit[,]" and an "Affidavit in Support of Attorney Fees[.]" (App. 36, 38, 41). In its motion for default judgment, Fifth Third "request[ed] that the Court enter judgment <u>IN REM</u> in its favor[.]" (App. 37) (emphasis in original).

Along with its motion for default judgment, Fifth Third submitted a proposed order, entitled "Default Judgment of Foreclosure" ("foreclosure order"), which the trial court adopted and signed that same day.[2] (App. 44). In its foreclosure order, the trial court "granted [Fifth Third] judgment IN REM in the amount of Ninety-two Thousand Nine Hundred Eleven Dollars and Nineteen Cents ($92,911.19) . . . with interest thereon from February 9, 2007, until the date of the Judgment at the per diem rate of $16.19 and with a post-judgment statutory interest rate of 6.75% thereupon until paid . . . ." (App. 45-46). The chronological case summary ("CCS") entry for March 13, 2007 contains the following notation to show that this foreclosure order was entered into the order book: "REM JUDGMENT FILED 3-7-07 FOR 3-7-07 RECEIVED AND ENTERED INTO ORDER BOOK THIS DATE." (App. 3). Additionally, on the front of the foreclosure order, someone handwrote "Rem"

---

[2] We note that both our Court and our Indiana Supreme Court have discouraged the verbatim adoption of a party's proposed order. *See Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013); *Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 993 n. 6 (Ind. Ct. App. 2005), *trans. denied*.

near the title of the order. (App. 44). Because this foreclosure order is the basis of both parties' arguments on appeal, we include a copy of it at the end of this opinion.

[9] Approximately one month later, on April 4, 2007, Fifth Third filed a "Praecipe for Sheriff's Sale[,]" and the Vanderburgh County Sheriff began the necessary steps to sell the Property at a sheriff's sale. (App. 56).

[10] In the meantime, on June 26, 2007, Fifth Third assigned its foreclosure judgment to Federal Home Loan Mortgage Corporation ("FHLMC"). Two days later, on June 28, 2007, the Vanderburgh County Sheriff held a sheriff's sale for the Property, and FHLMC purchased the Property for $76,000.00, leaving a deficiency of $16,911.19 from the foreclosure judgment amount.

[11] Thereafter, on May 5, 2008, FHLMC assigned its interest in the foreclosure judgment to Dyck O'Neal. On October 27, 2008, Dyck O'Neal filed a motion to substitute itself as plaintiff in the mortgage foreclosure proceeding. Dyck O'Neal also filed a motion for discovery to a non-party, the Indiana Department of Workforce Development, seeking employment records for the Elliotts, and the trial court granted this motion.

[12] Despite the *in rem* nature of the foreclosure judgment, on July 27 and August 5, 2009, Dyck O'Neal filed a "Motion for Proceedings Supplemental to Execution[,]" seeking an order for garnishment of William's wages (collectively referred to as "garnishment motion"). (App. 68, 69). In its garnishment motion, Dyck O'Neal stated that it "own[ed] a judgment against the judgment

defendant, William C[.] Elliott, obtained in this Court on March 07, 2007, for the sum of $93,315.94 interest and costs" and that this "judgment was partially satisfied by virtue of a Sheriff's Sale, leaving a balance due on the judgment in the amount of $17,315.94, plus post judgment interest from the date of the judgment[.]" (App. 69). Dyck O'Neal further stated that it had "no cause to believe that levy of execution" against William would "satisfy said judgment[,]" and it sought an "appropriate order to apply [William's] property towards said [foreclosure] judgment pursuant to statute." (App. 69).

[13] On September 22, 2009, the trial court held a hearing on Dyck O'Neal's garnishment motion. That same day, the Elliotts, pro se, filed a "Motion to Set Aside Judgment[,]" in which they alleged as follows:

> 1. That the defendant filed for bankruptcy in March 2005. That defendant consulted with the plaintiff, Fifth Third Bank, prior to filing and was reassured that if defendant reaffirmed the [P]roperty . . . that the plaintiff would work with the defendant if the defendant could not make mortgage payments in the future.
>
> 2. That when the defendant could not make said mortgage payment in August 2006, that the plaintiff, Fifth Third Bank, refused to work with the defendant. That the defendant offered [an] interest only payment and [a] partial payment that plaintiff refused[.] That the plaintiff deliberately misled the defendant to keep [the P]roperty out of bankruptcy filing.
>
> 3. That defendant listed and tried to sell [the P]roperty and the plaintiff refused short s[ale] of [the P]roperty.
>
> 4. That the defendant offered deed in lieu of mortgage and that the plaintiff refused.
>
> 5. That defendant has paid the plaintiff $25,273.45 in interest and $4,472.36 in principal for a total sum of $29,745.81.

6. That the plaintiff, Fifth Third Bank, sold the [P]roperty at 701 S. Norman Ave. for the sum of $82,000.00 on January 4, 2008.

7. That the plaintiff has already received $111,945.81 in compensation for the [P]roperty. That awarding plaintiff judgment of $17,315.94 would be excessive compensation for the original mortgage of $92,200.00.

8. That awarding plaintiff the judgment would place an undue hardship upon defendant.

(App. 70). After the hearing, the trial court denied the Elliotts' motion and entered a garnishment order ("September 2009 garnishment order").[3] The CCS entry for this hearing provides as follows:

[Fifth Third] by counsel, J. Fuson. [The Elliotts] in person. [The Elliotts] file[d] [a] motion to set aside [the] judgment. Argument heard. [The Elliotts] have not shown excusable neglect in answering the complaint and while [they] may have [had] an equitable defense, they d[id] not have a legal defense. Order of garnishment entered. Voluntary wages agreement for $50.00 per week begin[ning on] 10/01/09.

(App. 4) (capitalization of all letters edited).

[14] Thereafter, William began paying Dyck O'Neal $50.00 per week by personal check. William consistently made the $50.00 weekly payments to Dyck O'Neal for the next four and one-half years until Dyck O'Neal filed a motion alleging that William had "defaulted" on the September 2009 garnishment order. (App.

---

[3] This September 2009 garnishment order is not included in the record on appeal.

71). Specifically, on March 24, 2014, Dyck O'Neal filed an "Affidavit of Default as to Voluntary Wage Agreement Order of 09/22/2009[,]" in which it alleged that the Elliotts had "defaulted on the agreed weekly payments as they [we]re submitting payments with the notation of 'Paid in Full' on each payment." (App. 71). Dyck O'Neal attached copies of three of the Elliotts' checks, one dated for March 1, 2014 and two dated for March 15, 2014, to its motion. That same day, the trial court "approved" the garnishment order submitted by Dyck O'Neal ("March 2014 garnishment order") and served it on William's employer. (App. 4) (capitalization of all letters edited).

[15] On April 2, 2014, the Elliotts, now represented by counsel, filed a motion to stay the March 2014 garnishment order. One week later, on April 9, 2014, the trial court held a hearing on the Elliotts' motion to stay. Thereafter, the trial court granted the motion to stay.[4] The trial court ordered the Elliotts to "continue to pay $50.00 per week in voluntary payments through the clerk of the court." (App. 5) (capitalization of all letters edited). Additionally, the trial court instructed the parties' counsel to "attempt to reach an agreement on the unpaid balance of the judgment and anticipate submitting an agreed entry[,]" and it set a progress hearing for April 30, 2014. (App. 5) (capitalization of all letters edited).

---

[4] The trial court's order granting the Elliotts' motion to stay was not included in the record.

[16] Meanwhile, on April 21, 2014, the Elliotts, by counsel, filed "Defendants['] Motion for Refund of Monies Paid toward Judgment" ("motion for refund"). (App. 74). As attachments to their motion, the Elliotts included a copy of the foreclosure order and an account statement, showing all of the payments they had made to Dyck O'Neal from October 1, 2009 through March 5, 2014. In the Elliotts' motion for refund, they stated that they had "made payments of approximately $12,000" to Dyck O'Neal "with respect to the [foreclosure] Judgment[,]" and they argued, in relevant part, that:

> 11. . . . the Judgment was only an IN REM Judgment, no payments were required to have been made by Defendants to the Plaintiff, Dyck O'Neall, [sic] Inc. Further, payments from the Defendants should not have been accepted by the Plaintiff. In addition, the Plaintiff should not have instituted any collection action whatsoever against Defendants, including the garnishment of the wages of the Defendant, William C. Elliott on March 24, 2014.

(App. 76). The Elliotts requested "the reimbursement of all payments made to Dyck O'Neal[], Inc. toward the Judgment, interest at the rate of 6.75% per annum from March 7, 2007, and their reasonable attorney fees[.]" (App. 76).

[17] On April 30, 2014, the trial court held its previously scheduled progress hearing. The trial court instructed Dyck O'Neal to file a response to the Elliotts' motion for refund, and it stayed its previous order that required the Elliotts to continue $50.00 payments on the foreclosure judgment.

[18] On June 27, 2014, Dyck O'Neal filed a response to the Elliotts' motion for refund, contending that they were not entitled to a refund because "the omission of *in personam* was merely a clerical mistake[.]" (App. 107). That same day, it also filed "Plaintiff's Motion to Amend Default Judgment, Nunc Pro Tunc" under Trial Rule 60 ("motion to amend the foreclosure judgment"). (App. 99). In its motion, Dyck O'Neal argued that the foreclosure order "contain[ed] a clerical mistake in paragraph number one, (1), as the phrase 'in personam' was inadvertently omitted from the granted judgment." (App. 99). Dyck O'Neal contended that paragraph one should be amended to read that Fifth Third was "granted judgment IN PERSONAM and IN REM[.]" (App. 99). Specifically, Dyck O'Neal proposed that the first paragraph should read, in relevant part:

> Plaintiff, Fifth Third, is hereby granted judgment IN PERSONAM and IN REM shall be, and hereby is, against the defendants William C. Elliott and Mary Kay Elliott in the amount of Ninety-two Thousand Nine Hundred Eleven Dollars and Nineteen Cents ($92,911.19) . . . with interest thereon from February 9, 2007, until the date of the Judgment at the per diem rate of $16.19 and with a post-judgment statutory interest rate of 6.75% thereafter until paid, without relief from the valuation and appraisement laws, together with the costs of this action and sale and any further costs Fifth Third incurs with respect to the maintenance of the real estate.

(App. 99-100). As one of its exhibits attached to its motion, Dyck O'Neal attached an affidavit from Fifth Third's foreclosure attorney, who drafted the proposed foreclosure order and who averred that "the wrong judgment entry

was prepared and submitted" in this proposed order. (App. 132). The attorney also asserted that "[t]here [wa]s nothing in the file, or under Indiana Law which would indicate that Fifth Third Mortgage Company or its successor in interest [wa]s not entitled to a personal judgment against the Defendants." (App. 132).

[19] On August 20, 2014, the trial court held a hearing on the Elliotts' motion for refund and Dyck O'Neal's motion to amend the foreclosure judgment.[5] The trial court denied both motions and ruled as follows:

> Given the nature of the judgment, i.e., an assigned deficiency judgment from a mortgage foreclosure, and that the order book entry from 3/7/07 did not contain simply a scrivener's error, but two distinctive second pages, one of which indicating the judgment was IN REM and one indicating an IN PERSONAM judgment, the court is denying [Dyck O'Neal's] motion to amend the [foreclosure] judgment. However, the court is also denying [the Elliotts'] motion for return of monies, given the facts of the case that the mortgage obligation had been reaffirmed and not discharged in bankruptcy.

(App. 6) (capitalization of most letters edited).[6]

[20] Thereafter, the Elliotts filed a motion to correct error. In their motion, they argued that, contrary to the trial court's finding, the foreclosure order did not have two distinct pages and that the trial court had erred by basing its denial of

---

[5] The transcript from this hearing was not requested and is, therefore, not in the record on appeal.

[6] The trial court's ruling is contained in the CCS but not in a separate order.

their motion for refund on such a finding.  The trial court denied the Elliotts'
motion.  The Elliotts now appeal the denial of their motion for refund, and
Dyck O'Neal cross-appeals the denial of its motion to amend the foreclosure
judgment.

# Decision

On appeal, the Elliotts argue that the trial court erred by denying their motion
for refund.  Dyck O'Neal has filed a cross-appeal, arguing that the trial court
erred by denying its motion to amend the foreclosure judgment.  We will
address each argument in turn.

Before addressing the parties' arguments, we note that this appeal ultimately
stems from a mortgage foreclosure action and the resulting foreclosure order.
Mortgage foreclosure actions are "essentially equitable" actions for "'the
enforcement of a lien against property in satisfaction of a debt.'"  *Songer v.
Civitas Bank,* 771 N.E.2d 61, 69 (Ind. 2002) (quoting *Skendzel v. Marshall,* 261
Ind. 226, 240, 301 N.E.2d 641, 650 (1973), *cert. denied*), *reh'g denied*.  *See also
Stoffel v. JPMorgan Chase Bank, N.A.*, 3 N.E.3d 548, 555 (Ind. Ct. App. 2014)
(explaining that "[a] mortgage foreclosure is a hybrid of law and equity[,]"
where a "complaint on the underlying debt is an action at law, and a complaint
to foreclose on the mortgage is a proceeding in equity") (citing *Lucas v. U.S.
Bank, N.A.,* 953 N.E.2d 457, 466 (Ind. 2012), *reh'g denied*).  "Notwithstanding
equity's influence, rules of law obviously guide the foreclosure process." *First
Fed. Sav. Bank v. Hartley*, 799 N.E.2d 36, 40 (Ind. Ct. App. 2003) (citing IND.

CODE §§ 32-30-10-1 through -14 (setting out procedures for mortgage foreclosure actions). "Moreover, 'where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law.'" *Id.* (quoting *Lake Cnty. Auditor v. Bank Calumet*, 785 N.E.2d 279, 281 (Ind. Ct. App. 2003).

## Cross-Appeal Issue

[23] We will first address Dyck O'Neal's cross-appeal issue. Dyck O'Neal argues that the trial court abused its discretion by denying its motion to amend the foreclosure judgment *nunc pro tunc* under Trial Rule 60(A).

[24] We review a motion for relief from judgment under Trial Rule 60 for an abuse of discretion. *First Bank of Madison v. Bank of Versailles*, 451 N.E.2d 79, 81 (Ind. Ct. App. 1983). "To constitute an abuse of discretion, it must be shown that the trial court's action is clearly against logic and the effect of [the] facts and circumstances before the court as well as the reasonable and probable inferences to be drawn therefrom." *Id.*

[25] Indiana Trial Rule 60(A) provides:

> **Clerical mistakes.** Of its own initiative or on the motion of any party and after such notice, if any, as the court orders, clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the trial court at any time before the Notice of Completion of Clerk's Record is filed under Appellate Rule 8. After filing of the Notice of Completion of Clerk's Record and during an appeal, such mistakes may be so corrected with leave of the court on appeal.

We have explained that, in the context of Trial Rule 60(A), a "clerical error" is defined as "a mistake by a clerk, counsel, judge, or printer that is not a result of judicial function and cannot reasonably be attributed to the exercise of judicial consideration or discretion." *KeyBank Nat'l Ass'n v. Michael*, 770 N.E.2d 369, 375 (Ind. Ct. App. 2002) (citing *Rosentrater v. Rosentrater*, 708 N.E.2d 628, 631 (Ind. Ct. App. 1999)), *trans. denied.* "The purpose of T.R. 60(A) is to recognize that[,] 'in the case of clearly demonstrable mechanical errors[,] the interests of fairness outweigh the interests of finality which attend the prior adjudication.'" *Rosentrater*, 708 N.E.2d at 631 (quoting *Sarna v. Norcen Bank*, 530 N.E.2d 113, 115 (Ind. Ct. App. 1988), *reh'g denied, trans. denied*). However, "'where the 'mistake' is one of substance[,] the finality principle controls.'" *Id.* (quoting *Sarna*, 530 N.E.2d at 115).

[26] "Trial Rule 60(A) merely provides a remedy to correct by *nunc pro tunc* entry clerical errors in judgments, orders, etc., or errors arising from oversight or omission[,]" but the rule "does not constitute a license to make judicial changes in the actual law or ruling of a case." *Artusi v. City of Mishawaka,* 519 N.E.2d 1246, 1248 (Ind. Ct. App. 1988), *trans. denied.*

> A nunc pro tunc order is "'an entry made *now* of something which was actually previously done, to have effect as of the former date.'" *Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995) (quoting *Perkins v. Hayward*, 132 Ind. 95, 101, 31 N.E. 670, 672 (1892)) (emphasis in original). A nunc pro tunc entry may be used to either record an act or event not recorded in the court's order book or to change or supplement an entry already recorded

in the order book. *Id.* The purpose of a nunc pro tunc order is to correct an omission in the record of action really had but omitted through inadvertence or mistake. *Id.* However, the trial court's record must show that the unrecorded act or event actually occurred. *Id.* A written memorial must form the basis for establishing the error or omission to be corrected by the nunc pro tunc order. *Id.*

*Brimhall v. Brewster*, 835 N.E.2d 593, 597 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. To provide a sufficient basis for the *nunc pro tunc* entry, the supporting written material:

(1) must be found in the records of the case; (2) must be required by law to be kept; (3) must show action taken or orders or rulings made by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described.

*Shipley v. KeyBank Nat'l Ass'n*, 821 N.E.2d 868, 881 (Ind. Ct. App. 2005) (quoting *Cotton*, 658 N.E.2d at 900). "'A *nunc pro tunc* entry cannot be used as the medium whereby a court can change its ruling actually made, however erroneous or under whatever mistakes of law or fact such ruling may have been made.'" *Brimhall*, 835 N.E.2d at 597 (quoting *Harris v. Tomlinson,* 130 Ind. 426, 433, 30 N.E. 214, 216 (1892)). In other words, "'[t]he crux of a nunc pro tunc entry, then, is that the trial court corrects the record on the basis of information which is already in the record. It is not license to make judicial changes in the actual law or ruling of the case.'" *Shipley*, 821 N.E.2d at 881 (quoting *Arsenal*

*Sav. Ass'n v. Westfield Lighting Co.*, 471 N.E.2d 322, 326 (Ind. Ct. App. 1984)) (italics omitted in original).

[27] Dyck O'Neal argues that the trial court should have granted its motion to amend the judgment, via a *nunc pro tunc* order, to reflect that the foreclosure judgment included an *in personam* judgment. Dyck O'Neal argues that the *in personam* judgment was "inadvertently omitted" from its proposed order submitted to the trial court and that this omission was a clerical mistake. (Dyck O'Neal's Br. 9).

[28] As support for its argument regarding the propriety of issuing a *nunc pro tunc* order and of amending the foreclosure judgment under Trial Rule 60(A), Dyck O'Neal cites to its complaint and amended complaint, contending that its predecessor, Fifth Third, requested an *in personam* judgment in its complaint and "never intended to request only an in rem judgment[.]" (Dyck O'Neal's Br. 12). Dyck O'Neal also cites to the parties' and the trial court's post-judgment treatment of the foreclosure order, contending that all involved took action as if the foreclosure order included an *in personam* judgment. Additionally, Dyck O'Neal relies on the trial court's order denying its motion to amend the foreclosure judgment. It contends that the language of the trial court's denial shows that the foreclosure order was "intended to be both in rem *and* in personam." (Dyck O'Neal's Br. 10) (emphasis added).

[29] Here, the "error" that Dyck O'Neal sought to have corrected was the addition of an *in personam* judgment to the foreclosure order. This error—which Dyck

O'Neal admits resulted from Fifth Third's counsel—is clearly one of substance and not proper under Indiana Trial Rule 60(A). *See, e.g.*, *First Bank of Madison*, 451 N.E.2d at 82 (affirming the trial court's denial of a party's request to alter the foreclosure judgment amount because the error, which was based on the party's own requested amount, was substantive rather than clerical); *see also KeyBank,* 770 N.E.2d at 375 (explaining that an amendment to the CCS to change appearance of an attorney was substantive rather than clerical, so Rule 60(A) did not apply); *Rissler v. Lynch*, 744 N.E.2d 1030, 1033 (Ind. Ct. App. 2001) (holding that the trial court did not abuse its discretion by denying the mother's Trial Rule 60(A) request to amend the amount of arrearage owed where the issue was not a clerical error and where the mother's counsel had agreed to the lower amount entered by the trial court); *Rosentrater*, 708 N.E.2d at 630 (holding that a wife's counsel's proposed valuation of the husband's stock plan and unintentional omission of a certain portion of the marital property from her proposed findings of fact submitted to the trial court was a substantive error and not a clerical error); *Hurst v. Hurst*, 676 N.E.2d 413, 415 (Ind. Ct. App. 1997) (holding that the trial court's "clarification" of the dissolution decree to include an initially excluded asset was a substantive change not proper under Trial Rule 60(A)).

[30] Additionally, we do not agree with Dyck O'Neal's contention that a *nunc pro tunc* order would have been appropriate in this matter. To provide a basis for Dyck O'Neal's requested *nunc pro tunc* order, there must have been a written memorial showing that the trial court actually entered an *in personam* judgment

against the Elliotts. The record before us does not contain such a basis as there is nothing to show that, at the time the trial court entered the *in rem* judgment in its foreclosure order, it also entered an *in personam* judgment. Indeed, the CCS entry for March 13, 2007—the date the trial court entered the foreclosure order—contains the following notation to show that this foreclosure order was entered into the order book: "REM JUDGMENT FILED 3-7-07 FOR 3-7-07 RECEIVED AND ENTERED INTO ORDER BOOK THIS DATE." (App. 3). "'[A] *nunc pro tunc* entry cannot be used to show an event happened which did not actually occur[.]'"). *Hammes v. Brumley*, 659 N.E.2d 1021, 1025 n.2 (Ind. 1995) (quoting *Cotton*, 658 N.E.2d at 901)), *reh'g denied*. Thus, the trial court correctly refused to issue a *nunc pro tunc* order to alter the foreclosure judgment to include an *in personam* judgment in addition to the *in rem* judgment entered. Therefore, we affirm the trial court's denial of Dyck O'Neal's motion to amend the foreclosure order.

### *Appeal Issue*

[31] We now turn to the Elliotts' challenge to the trial court's denial of their motion for refund and subsequent motion to correct error.

[32] We review a trial court's denial of a motion to correct error for an abuse of discretion. *Scales v. Scales,* 891 N.E.2d 1116, 1118 (Ind. Ct. App. 2008). An abuse of discretion occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* Additionally, as here, where neither party filed a written request for findings and conclusions, the trial court's sua sponte findings are controlling only as to issues they cover. *In re*

*Adoption I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015) (citing *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)). "[A] general judgment will control as to the issues upon which there are no findings." *Yanoff*, 688 N.E.2d at 1262. Under the general judgment standard, we will affirm on any legal theory supported by the evidence. *In re Adoption I.B.*, 32 N.E.3d at 1169.

[33] Dyck O'Neal contends that the Elliotts have provided no legal basis for their motion for refund. In their reply brief, the Elliotts respond that their motion for refund was an equitable remedy and contend that any assertion of a legal claim would be "rather premature, as [they] first needed to stop the bleeding from [Dyck O'Neal's] continued wrongful collection efforts over the period of September 2009 through and including March 2014" by first establishing that Dyck O'Neal had "no lawful basis to collect approximately Twelve Thousand Dollars ($12,000.00) from [the] Elliott[s] on a Judgment providing only 'IN REM' relief." (Elliotts' Reply Br. 8).

[34] As stated above, this appeal ultimately stems from the foreclosure order entered in 2007. The parties do not dispute that the foreclosure order did not entitle Dyck O'Neal to collect a personal judgment from the Elliotts because this order did not contain an *in personam* judgment. The Elliotts argue that this lack of an *in personam* judgment entitles them to a refund of the money they paid to Dyck O'Neal pursuant to the trial court's entry of the September 2009 garnishment order.

[35] Given the unique and specific facts of this case and because equity so demands, we agree that the Elliotts are entitled to a refund of the money that they paid pursuant to the garnishment order that was improperly based on an *in rem* judgment.[7] "As a general proposition, the trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved." *Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1178 (Ind. Ct. App. 2006), *trans. denied.* Indeed, "[e]quity has power, where necessary, to pierce rigid statutory rules to prevent injustice." *Id.* Courts can exercise equitable powers where an adequate remedy at law does not exist. *Id.*

[36] This case—which stems from a foreclosure proceeding followed by proceedings supplemental—necessarily involves significant equitable considerations. *See Rose v. Mercantile Nat'l Bank of Hammond*, 868 N.E.2d 772, 775 (Ind. 2007) (explaining that a proceeding supplemental has its "roots in equity"); *Songer,* 771 N.E.2d at 69 (explaining that a mortgage foreclosure action is "essentially equitable"). Here, in the foreclosure proceeding against the Elliotts, the trial court entered a default judgment and entered only an *in rem* judgment. After the Property was sold at a sheriff's sale, Dyck O'Neal improperly initiated

---

[7] We acknowledge that the Elliotts' motion for refund being appealed appears to be, in essence, a collateral attack of the trial court's September 2009 garnishment, which required the Elliotts to make the payments for which they now seek a refund. Although they did not initiate an appeal from this garnishment order, we find that there are "extraordinarily compelling reasons" to address the merits of such an attack of that order, which improperly ordered the Elliotts to pay a deficiency judgment based on an *in rem* judgment in a foreclosure order. *See In re Adoption of O.R.,* 16 N.E.3d 965, 971 (Ind. 2014) (explaining that appellant who procedurally forfeits his or her right to an appeal may have that right restored where there are "extraordinarily compelling reasons" to address the appeal on its merits).

proceedings supplemental from the *in rem* judgment and sought an order for garnishment of wages. The trial court then improperly entered a garnishment order, which essentially allowed Dyck O'Neal to recover a deficiency from that *in rem* judgment and required the Elliotts, who were not represented by counsel at that time, to pay $50.00 per week. Here, given the specific facts of this particular case, we conclude that equity demands that the Elliotts are entitled to a refund and that the trial court erred by failing to grant that equitable remedy. Accordingly, we reverse the trial court's order denying the Elliotts' motion for refund, and we remand with instructions to determine the total amount paid by the Elliotts to Dyck O'Neal and enter an order for the refund of that amount including the applicable interest.

[37] Affirmed in part, reversed in part, and remanded.

Crone, J., concurs.

Brown, J., dissents with opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William C. Elliott and Mary Kay Elliott, | Court of Appeals Case No. 82A05-1411-MF-518 |
| *Appellants/Cross-Appellees-* | |
| *Defendants,* | |
| v. | |
| Dyck O'Neal, Inc., Successor in interest to Fifth Third Mortgage Company, | |
| *Appellee/Cross-Appellant-Plaintiff.* | |

**Brown, Judge, dissenting.**

[38] I respectfully dissent from the majority's conclusion that the Elliotts are entitled to a refund and that the trial court erred by failing to grant that remedy. At the time of the September 2009 garnishment order, Ind. Appellate Rule 9(A) provided that "[a] party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment" and that "[u]nless the Notice of Appeal is timely filed, the right to appeal shall be

forfeited except as provided by P.C.R. 2."[8] The Elliotts did not appeal the September 2009 garnishment order. Instead, they paid fifty dollars per week until they challenged the propriety of the order over four and one-half years later when they filed their motion for refund on April 21, 2014.

[39] The majority acknowledges that the Elliotts' appeal is a collateral attack on the trial court's September 2009 garnishment and that the Elliotts did not initiate an appeal from the garnishment order, but cites *In re Adoption of O.R.*, 16 N.E.3d 965 (Ind. 2014), to support the conclusion that there are extraordinarily compelling reasons to address the merits of such an attack.

[40] I find *Adoption of O.R.* distinguishable. In that case, the biological father of a minor child attempted to appeal the trial court's order granting an adoption petition in favor of third parties. 16 N.E.3d at 967. Father wrote a letter requesting appointment of appellate counsel four days before the deadline for filing a notice of appeal. *Id.* at 968. Following the withdrawal of father's counsel, new appellate counsel filed a petition to accept an "Amended Notice of Appeal" twenty-three days after the deadline had passed. *Id.* Because the notice of appeal was not timely filed, a panel of this court dismissed the case on grounds that it lacked jurisdiction to hear the appeal. *Id.* at 967. On transfer, the Indiana Supreme Court held that the untimely filing of a notice of appeal is

---

[8] The current version of Ind. Appellate Rule 9(A) provides in relevant part that "[a] party initiates an appeal by filing a Notice of Appeal with the Clerk (as defined in Rule 2(D)) within thirty (30) days after the entry of a Final Judgment is noted in the Chronological Case Summary," and "[u]nless the Notice of Appeal is timely filed, the right to appeal shall be forfeited except as provided by P.C.R. 2."

not a jurisdictional bar precluding appellate review. *Id.* at 967-968. The Court held that when the right to appeal is forfeited under Ind. Appellate Rule 9(A) for failure to timely appeal within thirty days, "the question is whether there are extraordinarily compelling reasons why this forfeited right should be restored." *Id.* at 971. The Court observed that Ind. Appellate Rule 1 provides that "[t]he Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules." *Id.* at 972. The Court held that "despite the 'shall be forfeited' language of Rule 9(A), the Rules themselves provide a mechanism allowing this Court to resurrect an otherwise forfeited appeal." *Id.*

[41] The Court observed the facts of that case and stated "perhaps most important, the Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *Id.* The Court concluded that "[i]t is this unique confluence of a fundamental liberty interest along with 'one of the most valued relationships in our culture' that has often influenced this Court as well as our Court of Appeals to decide cases on their merits rather than dismissing them on procedural grounds," and that "in light of Appellate Rule 1, Father's attempt to perfect a timely appeal, and the constitutional dimensions of the parent-child relationship, we conclude that Father's otherwise forfeited appeal deserves a determination on the merits." *Id.*

[42] The Elliotts did not file a notice of appeal of the September 2009 garnishment order, and their appeal essentially amounts to a collateral attack on a previously issued final judgment. *See JPMorgan Chase Bank, N.A. v. Brown*, 886 N.E.2d 617,

621 n.5 (Ind. Ct. App. 2008) (explaining that a garnishment order is a final judgment). Even assuming that the analysis in *O.R.* applied, I would find no such extraordinarily compelling reasons exist in this case, especially given the long delay in the challenge to the propriety of the garnishment order. Furthermore, even if we were to consider the Elliotts' motion for refund as a motion for relief from the September 2009 garnishment order pursuant to Trial Rule 60(B), it would still be untimely. A Rule 60(B) motion must be filed "not more than one year after the judgment" if based on reasons (1), (2), (3), or (4), or it must be filed "within a reasonable time" if based on reasons (5), (6), (7), or (8). T.R. 60(B). "The determination of what constitutes a reasonable time varies with the circumstances of each case." *Levin v. Levin*, 645 N.E.2d 601, 605 (Ind. 1994). "Relevant to the question of timeliness is prejudice to the party opposing the motion and the basis for the moving party's delay." *Id.* Here, the Elliott's motion for refund was not filed within one year nor a reasonable time after the entry of that judgment. The Elliotts waited over four and a half years to seek relief from the September 2009 garnishment order, and such period of time is not reasonable. *See id.* (holding that a husband's delay of five years from the dissolution order to challenge his support obligation did not constitute a reasonable time and holding that his excuse that he was unaware of his legal actions because he was not represented by counsel was insufficient to justify the length of the delay).

[43] For these reasons I respectfully dissent and would affirm the trial court's denial of the Elliotts' motion for refund.

00206

STATE OF INDIANA ) IN THE VANDERBURGH SUPERIOR COURT 3
) SS:
COUNTY OF VANDERBURGH ) CAUSE NO.: 82D03-0701-MF-00185

FIFTH THIRD MORTGAGE COMPANY, )
)
    Plaintiff, )
)
vs. )
) VANDERBURGH SUPERIOR COURT
) **FILED**
WILLIAM C. ELLIOTT, )
MARY KAY ELLIOTT AND )
HONOR STATE BANK, ) MAR 07 2007
)
    Defendants. ) _Susan K. Kirk_
)             **CLERK**

## DEFAULT JUDGMENT OF FORECLOSURE

COMES NOW the Plaintiff, Fifth Third Mortgage Company (hereinafter referred to as "Fifth Third"), by counsel, and having heretofore filed its Complaint on Note and for Foreclosure of Mortgage and it appearing to the satisfaction of the Court by the Summons issued herein and the Clerk's Return endorsed thereon, that the Defendants, William C. Elliott, Mary Kay Elliott and Honor State Bank, having been duly served with process twenty-three (23) days prior to the return of said Summons.

And the Plaintiff having filed an Affidavit of Non-Military Service as to the Defendants, William C. Elliott and Mary Kay Elliott.

And the Defendants, William C. Elliott, Mary Kay Elliott and Honor State Bank, having failed to appear or respond to plaintiff's complaint are hereby defaulted.

And this cause is now submitted to the Court for finding, and the Court being duly advised in the premises, finds for the Plaintiff and against the Defendants, William C. Elliott and Mary Kay Elliott, the sum of $92,911.19, computed as follows:

OFFICE OF COUNTY CLERK
RECEIVED

MAR 12 2007

044

| | |
|---|---|
| Principal Balance | $87,525.99 |
| Accrued Interest as of Feb 09, 2007 | 3,575.80 |
| Title Search | 275.00 |
| Late Charges | -179.40 |
| Court Costs | 142.00 |
| Service of Process | 13.00 |
| Attorney Fees | 1,200.00 |
| | |
| TOTAL: | $92,911.19 |

And the Court further finds that in addition to said sum, Fifth Third shall receive interest at the per diem rate of $16.19 per day from February 9, 2007, until the date of judgment and final decree, with a post-judgment statutory interest rate of 6.75% thereupon until paid, plus further costs incurred.

And the Court finds that said sums are secured by a mortgage upon the real estate in Vanderburgh County, Indiana, more particularly described as follows:

Lot Seventy (70) in Schreedar Place, an Addition to the City of Evansville, as per plat thereof, recorded in Plat Book F, page 106, in the Office of the Recorder of Vanderburgh County, Indiana.
and commonly known as 701 South Norman Avenue, Evansville, IN 47714 .

And the Court further finds that on March 9, 2005, the Defendants, William C. Elliott and Mary Kay Elliott filed for protection under Chapter 7 of the U.S. Bankruptcy Code, Case No. 05-70423-BHL. The Bankruptcy case was discharged on June 7, 2005. The Bankruptcy case was closed on June 14, 2005.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:

1.      Plaintiff, Fifth Third, is hereby granted judgment IN REM in the amount of Ninety-two Thousand Nine Hundred Eleven Dollars and Nineteen Cents ($92,911.19) against William C. Elliott and Mary Kay Elliott, computed as follows:

00208

| | |
|---|---|
| Principal Balance | $87,525.99 |
| Accrued Interest as of Feb 09, 2007 | 3,575.80 |
| Title Search | 275.00 |
| Late Charges | 179.40 |
| Court Costs | 142.00 |
| Service of Process | 13.00 |
| Attorney Fees | 1,200.00 |
| TOTAL: | $92,911.19 |

with interest thereon from February 9, 2007, until the date of the Judgment at the per diem rate of $16.19 and with a post-judgment statutory interest rate of 6.75% thereafter until paid, without relief from valuation and appraisement laws, together with the costs of this action and sale and any further costs Fifth Third incurs with respect to the maintenance of the real estate.

2. The mortgage lien of the Plaintiff, Fifth Third Mortgage Company, be, and the same hereby is, foreclosed, and the equity of redemption of the Defendants, William C. Elliott and Mary Kay Elliott, the other Defendants herein, and all persons claiming from, under or through them or any of them and to the real estate are forever barred and foreclosed as to real estate located in Vanderburgh County, Indiana, more particularly described as follows:

Lot Seventy (70) in Schreedar Place, an Addition to the City of Evansville, as per plat thereof, recorded in Plat Book F, page 106, in the Office of the Recorder of Vanderburgh County, Indiana.

hereinafter referred to as the "Real Estate," and commonly known as 701 South Norman Avenue, Evansville, IN 47714.

3. The Plaintiff's mortgage provides for the payment of reasonable attorneys' fees, and a reasonable fee for Plaintiff's attorney is One Thousand Two Hundred Dollars ($1,200.00) as hereinabove shown.

4. That if the residential structure on the real estate is a manufactured home, that any interest of the defendant(s) in the manufactured home be, and the same is hereby foreclosed and the Bureau of Motor Vehicles is hereby ordered to issue a certificate of title in the Plaintiff's name to the manufactured home and that the Bureau of Motor Vehicles is ordered to retire the Certificate of Title to the Manufactured home as it is now attached to and part of the real estate.

5. The Real Estate, and all right, title and interest of the Defendants, William C. Elliott and Mary Kay Elliott, and all persons claiming from, under or through them or any of them in and to the Real Estate, shall be sold by the Sheriff of Vanderburgh County, Indiana, in the manner as by law provided, without relief from valuation and appraisement laws, and the proceeds of sale shall be applied in the following order (See I.C. § 32-30-10-14):

First, to pay the expenses of the offer and sale, including expenses of the Sheriff incurred under I.C. § 32-29-7-4 or 32-30-10-9;

Second, to pay any property taxes on the property sold that are due and owing and for which the due date has passed as of the date of the sheriff's sale;

Third, to pay any amount of redemption where a certificate of sale is outstanding;

Fourth, to the payment to the Plaintiff, Fifth Third Mortgage Company, the principal, interest and costs due, and the residue secured by the Mortgage not due, in the sum of Ninety-two Thousand Nine Hundred Eleven Dollars and Nineteen Cents ($92,911.19) with interest at the per diem rate of $16.19 from February 9, 2007, until the date of judgment, and with a post-judgment statutory interest rate of 6.75% thereafter until paid, and any further costs incurred by Fifth Third Mortgage Company;

Fifth, when the proceeds of sale exceed the total of the amounts described above, the surplus will be paid to the clerk of the court to be transferred as the court directs.

6. The Plaintiff shall have the right at such sale to bid for the aforesaid real estate offered for sale, and in the event Plaintiff shall be the successful bidder, it shall have the right to apply the amount of the judgment herein rendered, or so much thereof as may be required, as a credit toward the purchase price of said Real Estate.

7. Plaintiff may cancel the Sheriff's Sale at any time prior to the scheduled time and date without further Order of the Court by providing notification to the Sheriff of Vanderburgh County or Sheriff's representative.

8. Upon the execution by the Sheriff of a Deed of Conveyance to the Real Estate sold hereunder, if not previously redeemed by the person or persons entitled thereto, any person who may be in possession of the Real Estate, or any part thereof, upon demand and exhibition of said Sheriff's Deed, or a true copy thereof, shall forthwith surrender the Real Estate to the holder of such Deed. In the event such person so in possession of the Real Estate shall refuse to fully and peacefully surrender possession of the Real Estate, the holder of said Sheriff's Deed shall file a petition for writ of assistance and upon receipt of the court's order to vacate, the Sheriff of Vanderburgh County shall forthwith vacate the Real Estate and give full and peaceful possession thereof to the purchaser under said Sheriff's sale.

9. A copy of this judgment and decree, duly certified by the Clerk of Vanderburgh County, under the seal of this Court, shall be sufficient authority to the Sheriff of Vanderburgh County, Indiana, to proceed as herein directed.

Dated this _____7th_____ day of _____March_____, 2007.          00211

_____Ralph J. Tarrwdler_____
Judge, Vanderburgh County Superior Court 3

Distribution list attached:

Craig D. Doyle (4783-49)
Joanne B. Friedmeyer (10819-49)
Andrew M. David (18600-09)
James L. Shoemaker (19562-49)
DOYLE & FRIEDMEYER, P.C.
First Indiana Plaza, Suite 2000
135 North Pennsylvania Street
Indianapolis, IN 46204-2456
Telephone (317) 264-5000
Facsimile (317) 264-5400

William C. Elliott
701 South Norman Avenue
Evansville, IN 47714

Mary Kay Elliott
701 South Norman Avenue
Evansville, IN 47714