PYLE, Judge.
Statement of the Case
[1] This appeal stems from an in rem mortgage foreclosure default judgment against William C. Elliott (“William”) and Mary Kay Elliott (“Mary Kay”) (collectively “the Elliotts”) and post-judgment proceeding supplemental — which was initiated by Dyck O’Neal, Inc. (“Dyck O’Neal”) as successor in interest to Fifth Third Mortgage Company (“Fifth Third”) — to collect on the deficiency from that in rem foreclosure judgment. After the trial court entered a garnishment order for the deficiency, the Elliotts, who were not represented by counsel, agreed to pay and began paying $50.00 per week toward the foreclosure deficiency. More than four years later, the Elliotts, then represented by counsel, filed a motion for a refund for the money paid toward the deficiency, arguing that the foreclosure order included only an in rem judgment against them. Thereafter, Dyck O’Neal filed a motion to amend the foreclosure order to add an in personam judgment. The trial court denied both motions.
[2] On appeal, the Elliotts argue that the trial court erred by denying its motion for refund from payments made pursuant to the garnishment order because the foreclosure order, which did not contain an in personam judgment, provided no basis for such payments. Dyck O’Neal cross-appeals the trial court’s denial of its motion to amend the foreclosure judgment, arguing that the omission of an in personam judgment in the foreclosure order was a clerical error. Concluding that the trial court did not err by denying Dyck O’Neal’s motion to amend the foreclosure judgment, we affirm the trial court’s ruling on that motion. However, based on the specific facts in this case, including the lack of an in personam judgment in the original default foreclosure order, we conclude that the Elliotts are entitled to the equitable relief of a refund of their payments made pursuant to the garnishment order. Accordingly, we reverse the trial court’s ruling on the Elliotts’ motion for refund and remand to the trial court.
[3] We affirm in part, reverse in part, and remand.
Issues
1. Cross-Appeal Issue — Whether the trial court erred by denying Dyck O’Neal’s motion to amend the foreclosure judgment.
2. Appeal Issue — Whether the trial court erred by denying the Elliotts’ motion for refund.
*451 Facts[1]
[4] In March 2002, the Elliotts' borrowed $92,200.00 from Fifth Third to finance the purchase of a house located at 701 South Norman Avenue in Evansville, Indiana (“the Property”). To secure payment of the note, the Elliotts executed a thirty-year mortgage with a 6.75% interest rate in favor of Fifth Third. In their note, the Elliotts agreed to be “fully and personally obligated to keep all of the promises made in th[e] Note, including the promise to pay the full amount owed.” (App. 14).
[5] Three years later, in March 2005, the Elliotts filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. They reaffirmed the Property in their bankruptcy proceeding, and, their bankruptcy case was discharged and closed in June 2005.
[6] On January 4, 2007, Fifth Third filed a “Complaint on Note and for Foreclosure on Mortgage” against the Elliotts. (App. 10). On January 29, 2007, Fifth Third filed an amended complaint, adding a subsequent mortgagee bank as a defendant. In Fifth Third’s amended complaint, it sought the following relief:
B.Enter judgment, in favor of Plaintiff and against the Defendants, William C. Elliott and Mary Kay Elliott, in the sum of $87,525.99, plus reasonable attorneys’ fee[s], and further interest and costs continually accumulating and all other costs herein, and all other relief proper in the premises;
C. Enter an Order foreclosing the Mortgage of Plaintiff on the above-described Real Estate and foreclosing and barring the Defendants’ equity of redemption and interest in the Real Estate;
D. Enter an Order directing the sale of the above-described Real Estate in order to pay the Judgment of Plaintiff, at such sale the Plaintiff will be empowered to bid for the'subject Real Estate or any part thereof with the indebtedness to be credited with any amount paid by Plaintiff; and if the proceeds from such sale are not sufficient to satisfy the Plaintiffs claim and debt herein found to be due and owing, for a further order directing the Sheriff to immediately levy upon the goods ■ and ' chattels of the Defendants William C. Elliott and Mary Kay Elliott, until such Judgment is satisfied in full[.]
(App. 33-34). The Elliotts and the junior mortgagee did not file an answer.
[7] On March 7, 2007, Fifth Third filed an “Application and Affidavit for Default Judgment” (“motion for default judgment”), an “Affidavit of Indebtedness and Non-Military Affidavit[,]” and an “Affidavit in Support of Attorney Fees[.]”' (App. 36, 38, 41). In its motion for default judgment, Fifth Third “requestfed] that the Court enter judgment'IN REM in its favor [.]” (App. 37) (emphasis in original).
[8] Along with its motion for default judgment, Fifth Third submitted a proposed order, entitled “Default Judgment of Foreclosure” (“foreclosure order”), *452 which.the trial court adopted and signed that same day.[2] (App. 44). - In its foreclosure order, the trial court “granted [Fifth Third] judgment IN REM in the amount of Ninety-two Thousand Nine Hundred Eleven Dollars and Nineteen Cents ($92,-911.19)- ... with interest., thereon from February 9, 2007, until the date of the Judgment .at the per diem rate of $16.19 and with a post-judgment statutory interest rate of 6.75% thereupon until paid....” (App. 45-46). The chronological case summary (“CCS”) entry for March 13,. 2007 contains the following notation to show that this foreclosure order was entered into the order book: “REM JUDGMENT FILED 3-7-07 FOR 3-7-07 RECEIVED AND ENTERED INTO ORDER BOOK THIS DATE.” (App. 3). Additionally, on the front of the foreclosure order, someone handwrote “Rem” near , the. title of the order. (App. 44). Because this foreclosure order is the basis of both parties’ arguments on appeal, we include a copy, of it at the,end of this opinion.
[9] Approximately one month later, on April 4, 2007, Fifth Third filed a “Praecipe for Sheriffs Sale[,]” and the Vanderburgh County Sheriff began the necessary steps to sell the Property at a sheriffs sale. (App. 56). •;
[10] In- the meantime, on June 26, 2007, Fifth Third assigned its foreclosure judgment- to Federal Home Loan Mortgage Corporation (“FHLMC”). Two days later, on June 28, 2007, the Vanderburgh County Sheriff held a sheriffs sale for the Property; and FHLMC purchased the Property for $76,000.00, leaving a deficiency of $16,911.19 from the foreclosure judgment. amount. .
[11] Thereafter, on May 5, 2008, FHLMC assigned its interest in the foreclosure judgment to Dyck O’Neal. On October 27, 2008, Dyck O’Neal filed a motion to substitute itself as plaintiff in the mortgage foreclosure proceeding. Dyck O’Neal also filed a motion for discovery to a non-party, the Indiana Department of Workforce Development, seeking; employment records for the Elliotts, and the trial court granted this motion.
[12] Despite the in rent nature of the foreclosure judgment, on July 27 and August 5, 2009, Dyck O’Neal filed a “Motion for Proceedings Supplemental to Execution[,]” seeking an order for garnishment of William’s wages (collectively referred to as “garnishment motion”). (App. 68, 69). In its garnishment motion, Dyck O’Neal stated that it “own[ed] a judgment against the judgment defendant, William C[.] Elliott, obtained in this Court on March 07, 2007, for the sum of $93,315.94 interest and -costs” and that this “judgment was partially satisfied by virtue of a Sheriffs Sale, leaving a balance due on the judgment in the amount of $17,315.94, plus post judgment interest from the date of the judgment^]” (App. 69). Dyck O’Neal further stated that it had “no cause to believe that levy of execution” against William would, “satisfy said judgment[J” and it sought an “appropriate order to apply [William’s] property towards said [foreclosure] judgment pursuant to statute.” (App. 69).
[13] On September 22, 2009, the trial court held a hearing on Dyck O’Neal’s garnishment motion. That same day, the Elliotts, pro se, filed a “Motion to Set Aside Judgment[,]” in which they alleged as follows:
*453 1. That the defendant filed for bankruptcy in March 2005. That defendant consulted with the plaintiff, Fifth Third Bank, prior to filing and was reassured that if defendant reaffirmed the [Pjrop-erty ... that the plaintiff would work with the defendant if the defendant could not make mortgage payments in the future.
2. That when the defendant could not ■ make said mortgage payment in August 2006, that the plaintiff, Fifth Third Bank, refused to work with the defendant. That the defendant offered [an] interest only payment and [a] partial payment that plaintiff refused[.] . That the plaintiff deliberately misled the defendant to keep [the Pjroperty out of bankruptcy filing.
3. That defendant listed and tried to sell [the Pjroperty and the plaintiff refused short s[ale] of [the Pjroperty.
4. That the defendant offered deed in lieu of mortgage and that the plaintiff refused.
5. That defendant has paid the plaintiff $25,273.45 in interest and $4,472.36 in principal .for a total sum . of $29,745.81.
6. That the plaintiff, Fifth Third Bank, sold the [Pjroperty at 701. S. Norman Ave. for the sum of $82,000.00 on January 4, 2008.
7. That the plaintiff has already received $111,945.81 in compensation for the [Pjroperty. That awarding plaintiff judgment of $17,315.94 would be excessive compensation for the original mortgage of $92,200.00.
8. That awarding plaintiff the judgment would place an undue hardship upon defendant.
(App. 70). After the hearing, the trial court denied the Elliotts’ motion and entered a garnishment order (“September 2009 garnishment order”).[3] The • CCS entry for this hearing provides as follows:
[Fifth ThirdJ by counsel, J. Fuson. [The Elliotts] in person. [The Elliotts] file[d] [a] motion to set aside [the] judgment. Argument heard. [The Elliotts] have not shown excusable neglect in answér-ing the complaint and while [they] may have [had] an equitable defense, they d[id] not have a legal defense. Order of garnishment entered. Voluntary wages agreement for $50.00 per week beginning on] 10/01/09.
(App. 4) (capitalization of all letters edited).
[14] Thereafter, William began paying Dyck O’Neal $50.00 per week by personal check. William consistently made the $50.00 weekly payments to Dyck O’Neal for the next four and one-haíf years until Dyck O’Neal filed a motion alleging that William had “defaulted” on the September 2009 garnishment order. (App. 71). Specifically, on March 24, 2014, Dyck O’Neal filed an “Affidavit of Default as to Voluntary Wage . Agreement Order of 09/22/2009[,]” in which it alleged that the Elliotts had “defaulted on the agreed weekly payments as they [we] re submitting payments with the notation of ‘Paid in Full’ on each payment.” (App. 71). Dyck O’Neal attached copies of three of the Elliotts’ checks, one dated for March 1, 2014 and, two dated for March 15, 2014, to its motion. That same day, the trial court “approved” the garnishment order submitted by Dyck O’Neal (“March 2014 garnishment. order”) and served it on William’s employer. (App. 4) (capitalization of all letters edited).
[15] On April 2, 2014, the Elliotts, now represented by counsel, filed a motion to stay the March 2014 garnishment order. One week later,- on April 9, 2014, the trial *454 court held a hearing on the Elliotts’ motion to stay. Thereafter, the trial court granted the motion to stay.[4] The trial court ordered the Elliotts to “continue to pay $50.00 per week -in voluntary payments through the clerk of the court.” (App. 5) (capitalization of all letters edited). Additionally, the trial court instructed the parties’ counsel to “attempt,to reach an agreement on the unpaid balance of the judgment and anticipate submitting an agreed entry[,]” and it set a progress hearing for April 30, .2014. (App. 5) (capitalization of all letters edited).
[16] Meanwhile, on April 21, 2014, the Elliotts, by counsel, filed “Defendants^] Motion for Refund of Monies Paid toward Judgment” (“motion for refund”). (App. 74). As attachments to their motion, the Elliotts included a copy of the foreclosure order and an account statement, showing all of the payments they had made to Dyck O’Neal from October 1, 2009 through March 5, 2014. In the Elliotts’ motion for refund, they stated that they had “made payments of approximately $12,000” to Dyck O’Neal “with respect to the [foreclosure] Judgment[,]” and they argued, in relevant part, that:
11. ... the Judgment was only an IN REM Judgment, no payments were required to have been made by Defendants to the Plaintiff, Dyck O’Neall, [sic] Inc! Further, payments from the Defendants should not have been accepted by the Plaintiff. In addition, the Plaintiff should not have instituted any collection action whatsoever against Defendants, including the garnishment of the wages of the Defendant, William C. Elliott on March 24, 2014.
(App. 76). The-Elliotts requested “the reimbursement of all payments made .to Dyck 0’Neal[ ], Inc. toward the Judgment, interest at the rate of 6.75% per annum from March 7, 2007, and their reasonable attorney fees[.]” (App. 76). , ■
[17] On April 30, 2014, the trial court held' its previously scheduled progress hearing. The trial court instructed Dyck O’Neal to file a response to the Elliotts’ motion for refund, and it stayed its previous order that required the Elliotts to continue $50.00 payments on the foreclosure judgment.
[183- On June 27, 2014, Dyck O’Neal filed a response to the Elliotts’ motion for refund, contending that they were not entitled to a refund because “the omission of in personam was merely a clerical mistake[.]” (App. 107). That same day, it also filed “Plaintiffs Motion to Amend Default Judgment, Nunc Pro Tunc” under Trial Rule 60 (“motion to amend the foreclosure judgment”). (App. 99). In its motion, Dyck O’Neal argued that the foreclosure order “contain[ed] a clerical mistake in paragraph number one, (1), as the phrase ‘in personam’ was inadvertently omitted from the granted judgment.” (App. 99). Dyck O’Neal contended that paragraph one should be amended to read that Fifth Third was “granted judgment IN PERSONAM and IN REM[.]” (App. 99). Specifically, Dyck O’Neal proposed that the first paragraph should read, in relevant part:
Plaintiff, Fifth Third, is hereby granted judgment IN PERSONAM and IN REM shall be, and hereby is, against the defendants William C. Elliott and Mary Kay Elliott in the amount of Ninety-two Thousand Nine Hundred Eleven Dollars and Nineteen Cents ($92,911.19) ... with-interest thereon from February 9, 2007, until the date of the Judgment at the per diem rate of $16.19 and with a post-judgment .statutory interest rate of :6.75% thereafter until paid, without re *455 lief from the valuation and appraisement laws, together with the costs of this action and sale and any further costs Fifth Third incurs with respect to the maintenance of the real estate.
(App. 99-100). As one of its exhibits attached to its motion, Dyck O’Neal attached an affidavit from Fifth Third’s foreclosure attorney, who drafted the proposed foreclosure order and who averred that “the wrong judgment entry was prepared and submitted” in this proposed order. , (App. 132). The attorney also asserted that “[tjhere [wa]s nothing in the file, or under Indiana Law which would indicate that Fifth Third Mortgage Company or its successor in interest [wa]s not entitled to a personal judgment against the Defendants.” (App. 132).
[19] On August 20, 2014, the trial court held a hearing on the Elliotts’ motion for refund and Dyck O’Neal’s motion to amend the foreclosure judgment.[5] The trial court denied both motions’ and ruled as follows:
Given the nature of the judgment,'i.e., an assigned deficiency judgment from a mortgage foreclosure, and that the order book entry from 3/7/07 did not' contain simply a scrivener’s error, but two distinctive second pages, one of which indicating the judgment was IN REM and one indicating an IN PERSONAM judgment, the court is denying [Dyck O’Neal’s] motion to amend the [foreclosure] judgment. However, the court is also denying [the Elliotts’] motion for return of monies, given the facts of'the case that the mortgage obligation had been reaffirmed and not discharged in bankruptcy.
(App. 6) (capitalization of most letters edited).[6]
[20] Thereafter, the Elliotts’ filed a motion to correct error. In their motion, they argued that, contrary to the trial court’s finding, the foreclosure order did not have two distinct pages and that the trial court had érred by basing its denial of their motion for refund on such a finding. The trial court denied the Elliotts’’motion. The Elliotts now appeal the denial of their motion for refund, and Dyck O’Neal cross-appeals the denial' of its motion to amend the foreclosure judgment.
Decision
[21] On appeal, the Elliotts argue that the trial court erred by denying their motion for refund. Dyck O’Neal has filed a cross-appeal, arguing that the trial court erred by denying its motion to amend the foreclosure judgment. We will address each argument in turn.
[22] Before addressing the parties’ arguments, we note that this appeal ultimately stems from a mortgage foreclosure action and the resulting foreclosure order. Mortgage foreclosure actions are “essentially equitable” actions for “ ‘the enforcement of a lien against property in satisfaction of a debt.’ ” Songer v. Civitas Bank, 771 N.E.2d 61, 69 (Ind.2002) (quoting, Skendzel v. Marshall, 261. Ind. 226, 240, 301 N.E.2d 641, 650 (1973), cert. denied), reh’g denied. See also Stoffel v. JPMorgan Chase Bank, N.A., 3 N.E.3d 548, 555 (Ind.Ct.App.2014) (explaining that “[a] mortgage foreclosure is a hybrid of law and equity [,]” where a “complaint on the underlying debt is an action at law, and a complaint to foreclose on the mortgage is a proceeding in equity”) (citing Lucas v. U.S. Bank, N.A., 953 N.E.2d 457, *456 466 (Ind.2012), reh’g denied). “Notwithstanding equity’s influence, rules ,of law obviously guide the foreclosure process.” First Fed. Sav. Bank v. Hartley, 799 N.E.2d,36, 40 (Ind.Ct.App.2003) (citing Ind.Code §§ 32-30-10-1 .through -14 (setting out procedures for mortgage foreclosure actions)). “Moreover, ‘where substantial justice can be accomplished by following the law, and the parties’ actions are clearly governed by rules of law, equity follows the law.’ ” Id.. (quoting Lake Cnty. Auditor v. Bank Calumet, 785 N.E.2d 279, 281 (Ind.Ct.App.2003)).

Cross-Appeal Issue

[23] .We -.will .first address Dyck O’Neal’s cross-appeal issue. Dyck O’Neal argues that the trial court abused its discretion by denying its motion to amend the foreclosure judgment nunc pro tunc under Trial Rule 60(A).
[24] We review a motion for relief from judgment under Trial Rule 60 for an abuse, of - discretion. First Bank of Madison v. Bank of Versailles, 451 N.E.2d 79, 81 (Ind.Ct.App.1983). “To constitute an abuse of discretion, it must be shown that the trial court’s action is clearly against logic--and the effect of [the] facts and circumstances before the court as well as the reasonable and probable inferences to be drawn therefrom.” Id.
[25] Indiana Trial Rule 60(A) provides:
Clerical mistakes. Of its own initiative or on the motion of any party and after such notice, if any, as the court orders, clerical mistakes in judgments, orders or other parts, of the record and errors therein arising from oversight or omission may be corrected by the trial court at any time before the. Notiee of Completion of Clerk’s Record is filed under Appellate Rule 8. After filing of the No- ■ tice of Completion of Clerk’s Record and during an appeal, such mistakes may be •so corrected with leave of. the court on appeal. , . ¡
We have explained that, in the context of Trial Rule 60(A), a “clerical error” is defined as “a mistake by a clerk, counsél, judge, or printer that' is not a result of judicial function and cannot reasonably be attributed to the exercise of judicial consideration or discretion.” KeyBank Nat’l Ass’n v. Michael, 770 N.E.2d 369, 375 (Ind.Ct.App.2002) (citing Rosentrater v. Rosentrater, 708 N.E.2d 628, 631 (Ind.Ct.App.1999)), trans. denied. “The'purpose of T.R., 60(A) is to recognize that[,] ‘in the case of clearly demonstrablé mechanical errors[,] the interests of fairness outweigh the interests of finality which attend the prior adjudication.’ ” Rosentrater, 708 N.E.2d at 631 (quoting Sarna v. Norcen Bank, 530 N.E.2d 113, 115 (Ind.Ct.App.1988), reh’g denied, trans. denied). However, “ ‘where the ‘mistake’ is one of substance[,]- the finality principle controls.’ ” Id. (quoting Sama, 530 N.E.2d at 115).
[26] “Trial Rule 60(A) merely provides a remedy to correct by nunc pro tunc entry clerical errors in judgments, orders, etc., or errors arising from oversight or omissionf,]” but the rule “does not constitute a license to make judicial changes in the actual law or ruling of a case.” Artusi v. City of Mishawaka, 519 N.E.2d 1246, 1248 (Ind.Ct.App.1988), trans. denied.
A nunc pro tunc order is “‘an entry made now of something which was actually previously done, to have effect as of the former date.’ ” Cotton v. State, 658 N.E.2d 898, 900 (Ind.1995) (quoting Perkins v. Hayward, 132 Ind. 95, 101, 31 N.E. 670, 672 (1892)) (emphasis in original). A nunc pro tunc entry may be used to either record an act or event not recorded in the court’s order book or to *457 change or supplement an entry already recorded in the order book. Id. The purpose of a nunc pro tunc order is to correct an omission in the record of action really had but omitted through inadvertence or mistake. Id, However, the trial court’s record must,-show that the unrecorded act or event ,actually occurred. Id. A written memorial must form the basis for establishing the error or omission to be corrected by the nunc pro tunc order. Id.
Brimhall v. Brewster, 835 N.E.2d 593, 597 (Ind.Ct.App.2005), reh’g denied, trans. denied. To provide a sufficient basis for the nunc pro tunc entry, the supporting -written material:
(1) must be found in the records of the case; (2) must be required by law to be kept; (3) must show action taken or orders or rulings made.by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described.
Shipley v. KeyBank Nat’l Ass’n, 821 N.E.2d 868, 881 (Ind.Ct.App.2005) (quoting Cotton, 658 N.E.2d at 900). “ ‘A nunc pro tunc entry cannot be used as the medium whereby a court can change its ruling actually made, however erroneous or under whatever mistakes of law or fact such ruling may have been made.’ ” Brimhall, 835 N.E.2d at 597 (quoting Harris v. Tomlinson, 130 Ind. 426, 433, 30 N.E. 214, 216 (1892)). In other words, “ ‘[t]he crux of a nunc pro tunc entry, then, is that the trial court corrects the record on the basis of information which is already in the record. It is not license to make judicial changes in the actual .law. or ruling of the case.’ ” Shipley, 821 N.E .2d at 881 (quoting Arsenal Sav. Ass’n v. Westfield Lighting Co., 471 N.E.2d 322, 326 (Ind.Ct.App,1984)) (italics omitted in original).
[27] Dyck O’Neal argues that the .trial court should have granted its motion to amend the judgment, via a nunc pro tunc order, to reflect that the foreclosure judgment included, an in personam judgment. Dyck O’Neal argues that the in personam judgment was “inadvertently omitted” from its proposed order submitted to the trial court and that this omission was a clerical mistake. (Dyck O’Neal’s Br. 9).
[28] As support for its argument regarding' the propriety' of issuing ’a nunc pro tunc order arid of amending the foreclosure judgment under Trial Rule 60(A), Dyck O’Neal cites to its' complaint and amended complaint, contending that its predecessor, Fifth Third, requested an in personam judgment in its complaint and “never intended to request only an in 'rem judgmentf.]” (Dyck O’Neal’s Br. 12). Dyck O’Neal also cites to the parties’ and the trial court’s post-judgment treatment of the foreclosure order, contending that all involved took action as if the foreclosure order included an in personam judgment. Additionally, Dyck O’Neal relies on the trial court’s order denying its motion to amend the foreclosure judgment. It contends that the language of the trial court’s denial shows that the foreclosure order was “intended to be both in rem and in personam.” (Dyck O’Neal’s Br. • 10) (emphasis added).
[29] Here, the “error” that Dyck O’Neal sought to have corrected was the addition of an in personam judgment to the foreclosure order. This error — which Dyck O’Neal admits resulted from Fifth Third’s counsel — is clearly one of substance and not proper under Indiana Trial Rule 60(A). See, e.g., First Bank of Madison, 451 N.E.2d at 82 (affirming the trial court’s denial of a party’s request to’ alter the foreclosure judgment- amount because the error, which was based on the party’s own requested amount, was substantive rather than clerical); see also KeyBank, 770 N.E.2d at 375 (explaining that an *458 amendment to the CCS to change appearance of an attorney was substantive rather than clerical, so Rule 60(A) did not apply); Rissler v. Lynch, 744 N.E.2d 1030, 1033 (Ind.Ct.App.2001) (holding that the trial court did not abuse its discretion by denying the mother’s Trial Rule 60(A) request to amend the amount of arrearage owed where the issue was not a clerical error and where the mother’s counsel had agreed to the lower amount entered by the trial court); Rosentmter, 708 N.E.2d at 630 (holding that a wife’s counsel’s proposed valuation of the husband’s stock plan and unintentional omission of a certain portion of the marital property from her proposed findings of fact submitted to the trial court was a substantive error and not a clerical error); Hurst v. Hurst, 676 N.E.2d 413, 415 (Ind.Ct.App.1997) (holding that the trial court’s “clarification” of the dissolution decree to include an initially excluded asset was a substantive change not proper under Trial Rule 60(A)).
[30] Additionally, we do not agree with Dyck O’Neal’s contention that a nunc pro tunc order would have been appropriate in this matter. To provide a basis .for Dyck O’Neal’s requested nunc pro tunc order, there must have been a written memorial showing that the trial court actually entered an in personam judgment against the Elliotts. The record before'us does not contain such a basis as there is nothing to show that, at the time the trial court entered the in rem judgment in its foreclosure order, it also entered an in personam judgment. Indeed, the CCS entry for March 13, 2007 — the date the trial court entered the foreclosure order — contains the following notation to show that this foreclosure order was entered into the order book: “REM JUDGMENT FILED 3-7-07-FOR-3-7-07 RECEIVED AND ENTERED INTO ORDER BOOK THIS DATE.” (App. 3). “‘[A] nunc pro tunc entry cannot be used to show an event happened which did not actually occur[.]’ ”, Hammes v. Brumley, 659 N.E.2d 1021, 1025 n. 2 (Ind.1995) (quoting Cotton, 658 N.E.2d at 901), reh’g denied. Thus, the trial court correctly refused to issue a nunc pro tunc order to alter the foreclosure judgment to include an in personam judgment in addition to the in rem judgment entered. Therefore, we affirm the trial court’s denial of Dyck O’Neal’s motion to amend the foreclosure order.

Appeal Issue

[31] We now turn to the Elliotts’ challenge to the trial court’s denial of their motion for refund and subsequent motion to correct error.
[32] We review a trial court’s denial of a motion to correct error for an abuse of discretion, • Scales v. Scales, 891 N.E.2d 1116, 1118 (Ind.Ct.App.2008). An abuse of discretion occurs where the trial court’s decision is against the logic and effect of the facts and circumstances before it. Id. Additionally, as here, where neither party filed a written request for findings and conclusions, the trial court’s sua sponte findings are controlling only as to issues they cover. In re Adoption I.B., 32 N.E.3d 1164, 1169 (Ind.2015) (citing Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind.1997)). “[A] general judgment will control as to the issues upon which there are no findings.” Yanoff, 688 N.E.2d at 1262. Under the general judgment standard, we will affirm on any legal theory supported by the evidence. In re Adoption I.B., 32 N.E.3d at 1169.
[33] Dyck O’Neal contends that the El-liotts have provided no legal basis for their motion for refund. In their reply brief, the Elliotts respond that their motion for refund was an- equitable remedy and contend that any assertion of a legal claim would be “rather premature, as [they] first needed to stop the bleeding from [Dyck *459 O’Neal’s] continued 'wrongful collection efforts over the period of September-2009 through and including March 2014” by first establishing that Dyck O’Neal had “no lawful basis to collect approximately Twelve Thousand Dollars ($12,000.00) from [the] Elliott[s] on a Judgment providing only TN REM’ relief;” (Elliotts’ Reply Br. 8).
[34] As stated above, this appeal ultimately stems from the foreclosure order entered in 2007. The parties do not dispute that the foreclosure order did not entitle Dyck O’Neal to collect a personal judgment from the Elliotts because this order did not contain an in personam judgment. The Elliotts argue that this lack of an in personam judgment entitles them to a refund of the money they'paid to Dyck O’Neal pursuant to the trial court’s entry of the September 2009 garnishment order.
[35] Given the unique and specific facts of this case and because equity so demands, we agree that the Elliotts are entitled to a refund of the money that they paid pursuant to the garnishment order that was improperly based .on . an in rem judgment.[7] “As a general proposition, the trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved.” Swami, Inc. v. Lee, 841 N.E.2d 1173, 1178 (Ind.Ct.App.2006), trans. denied. Indeed, “[e]quity has power, where necessary, to pierce rigid statutory rules to prevent injustice.” Id. Courts can exercise equitable powers where an adequate remedy at law does not exist. Id.
[36] This case — which stems from a foreclosure proceeding followed by proceedings supplemental — necessarily involves significant equitable considerations. See Rose v. Mercantile Nat'l Bank of Hammond, 868 N.E.2d 772, 775 (Ind.2007) (explaining that a proceeding supplemental has its “roots in equity”); Songer, 771 N.E.2d at 69 (explaining that a mortgage foreclosure action is “essentially equitable”). , Here, in the foreclosure proceeding against the Elliotts, the trial court entered a default judgment and entered only an in rem judgment. After the Property was sold at a sheriffs sale, Dyck O’Neal improperly initiated proceedings supplemental from the in 'rem judgment and sought an order for garnishment of wages. The trial court then improperly entered a garnishment order, which essentially allowed Dyck O’Neal to recover a deficiency from that in rem judgment and' required the Elliotts, who were not represented by counsel at that time, to pay $50.00 per week. Here, given the specific facts of this particular case, we conclude that equity demands that the Elliotts are entitled to a refund and that the trial court erred by failing to grant that equitable remedy. Accordingly, we reverse the- trial court’s order denying the Elliotts’ motion for refund, and we remand with instructions to determine the total amount paid by the Elliotts to Dyck O’Neal and enter an order *460 for the refund of that amount including the applicable interest.
[37] Affirmed in part, reversed in part, and remanded.
CRONE, J., concurs.
BROWN, J., dissents with opinion.

. We note that, although both parties filed appendices, there are multiple pleadings from this foreclosure proceeding that ‘the parties failed to include in their appendices. We direct the parties’ attention to Appellate Rule 50(A)(2)(f), which provides that an appellate appendix should include “pleadings and other documents from the Clerk’s Record in chronological order that are necessary-for resolution of the issues raised on appeal[.]” See also Ind, App. R: 50(A)(3) (providing that the contents of an Appellee’s Appendix is governed by the same rule that applies to an Appellant's Appendix). Additionally, because Dyck O’Neal failed to include a Summary of the Argument section in its brief, we direct its attention to Appellate Rule 46, which sets forth the arrangement and content requirements for appellate briefs.

. We note that both our Court and our Indiana Supreme Court have discouraged the verbatim adoption of a party's proposed order. See Kesting v. Hubler Nissan, Inc., 997 N.E.2d 327, 332 (Ind.2013); Safety Nat’l Cas. Co. v. Cinergy Corp., 829 N.E.2d 986, 993 n. 6 (Ind.Ct.App.2005), trans. denied.

. This September 2009 garnishment order is not included in the record on appeal.

. The trial court’s order granting the Elliotts’ motion to stay was not included in the record.

. The transcript from this hearing was not requested and is, therefore, not in the record on appeal.

. The trial court’s ruling is contained in the CCS but not in a separate order.

. We acknowledge that the Elliotts’ motion for refund being appealed appears to be, in essence, a collateral attack of the trial court’s September 2009 garnishment, which required the Elliotts to make the payments for which they now seek a refund. Although ¡they did not initiate an appeal from this garnishment order, we find that there are "extraordinarily compelling reasons” to address the,.merits of such an attack of that order, which improperly ordered the Elliotts to pay a deficiency judgment based on an in rem judgment in a foreclosure order. See In re Adoption of O.R., 16 N.E.3d 965, 971 (Ind.2014) (explaining that appellant who procedurally forfeits his or her right to an appeal may have that right restored where there are "extraordinarily compelling reasons” to address the appeal on its merits).