## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2016, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John J. Schwarz, II
Schwarz Law Office, PC
Hudson, Indiana

ATTORNEYS FOR APPELLEE

John R. Gastineau
Larry L. Barnard
Carson Boxberger LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert J. Fiedler and
Dianne C. Fiedler,

*Appellants-Respondents,*

v.

LaGrange County Regional
Utility District,

*Appellee-Petitioner*

May 25, 2016

Court of Appeals Case No.
44A03-1512-MI-2316

Appeal from the LaGrange Circuit
Court

The Honorable Randy Coffey,
Special Judge

Trial Court Cause No.
44C01-1308-MI-56

**Baker, Judge.**

[1] Robert and Dianne Fiedler appeal the trial court's order denying their motion for relief from judgment pursuant to Trial Rule 60(B) on the complaint filed against them by the LaGrange County Regional Utility District (Utility District). Finding no error, we affirm.

## Facts

[2] In February 2008, the Utility District entered into an agreement to provide sewer services to the residences located around Shipshewana Lake. Some or all of the funding for the sewer project was provided by the United States Department of Agriculture (USDA). The Code of Federal Regulations requires that the Utility District, having accepted USDA funding, was obligated to comply with the Uniform Relocation Assistance and Real Property Acquisition Act (URA). 49 CFR 24.101(c)(1).

[3] For the Utility District to provide sewer services to the affected residences, a grinder pump and other equipment had to be installed on each lot. The Utility District notified the affected homeowners that it would install all necessary equipment, at no cost to the homeowners, if the homeowners granted a voluntary easement to the Utility District for the installation and maintenance of the equipment. The Fiedlers owned a lot on Shipshewana Lake and declined to grant a voluntary easement to the Utility District. Rather than proceed with condemnation proceedings, as allegedly required by the URA, the Utility District merely stated that it would not install the equipment, that the Fiedlers would have to do so at their own cost, and that the Fiedlers were required to

disconnect their private septic tank system by a certain date. At Utility District meetings held on July 11 and August 8, 2012, an attorney for the Utility District and a Board member told Robert Fiedler that the Utility District was not required to comply with the URA. Appellants' App. p. 70-72. The Fiedlers did not comply with the directives issued by the Utility District.

[4] On August 22, 2013, the Utility District filed a complaint against the Fiedlers, seeking an order to force the Fiedlers to connect to the District's sewer line, to discontinue use of their own private septic system, and to pay the costs and attorney fees stemming from the litigation.[1] The Utility District filed a motion for summary judgment on March 6, 2014, and the Fiedlers, pro se, filed a cross-motion for summary judgment on June 4, 2014.

[5] The trial court held a hearing on the cross-summary judgment motions on October 15, 2014. On October 24, 2014, the Fiedlers—newly represented by counsel—filed a motion to amend their answer and to file counterclaims, alleging for the first time that the Utility District was required—and failed—to comply with the URA and acted fraudulently throughout its dealings with the Fiedlers. On November 19, 2014, the trial court entered partial summary judgment in favor of the Utility District, finding that the Fiedlers were required to connect to the sewer system and reserving the calculation of damages, to include attorney fees and hook-up fees, for a later proceeding. The Fiedlers

---

[1] There were other named defendants in the Utility District's complaint, but they are not participating in this appeal.

sought an interlocutory appeal of this order, but their appeal was eventually dismissed.

[6] As the appellate proceedings were ongoing, counsel for the Fiedlers sought documentation pursuant to the Freedom of Information Act. Eventually, he received the documents he had been seeking, which confirmed that the Utility District was aware from the inception of the agreement with the USDA that it would be bound by the URA.

[7] On October 22, 2015, the Fiedlers filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B), alleging that the fraudulent behavior of the Utility District and/or newly discovered evidence warranted a ruling in their favor. On November 25, 2015, the trial court summarily denied the motions. The Fiedlers now appeal.

## Discussion and Decision

[8] The Fiedlers contend that the trial court erroneously denied their motion for relief from judgment. In this case, the Fiedlers argue that they are entitled to relief pursuant to Trial Rule 60(B), which provides, in pertinent part, as follows:

> On motion and upon such terms are just the court may relieve a party or his legal representative from a judgment, . . . for the following reasons:
>
> ***
>
> (2)    any ground for a motion to correct error, including without limitation newly discovered evidence, which by

due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3)  fraud . . . , misrepresentation, or other misconduct of an adverse party . . . .

We review a motion for relief from judgment under Trial Rule 60 for an abuse of discretion. *Elliott v. Dyck O'Neal, Inc.*, 46 N.E.3d 448, 456 (Ind. Ct. App. 2015), *trans. denied*. We will reverse only if the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it as well as the reasonable and probable inferences to be drawn therefrom. *Id.*

[9]  The Fiedlers contend that, until they received documentation pursuant to their Freedom of Information Act request, they were unaware and/or unable to prove that the Utility District was required to comply with the URA.[2] We disagree. The USDA's website contains a wealth of readily accessible information. Among other things, there is a "Water and Waste Processing Checklist" setting forth the documentation that an applicant must provide to receive USDA funding. *Water and Waste Processing Checklist*, RUS Bulletin 1780-6, http://www.rd.usda.gov/files/UWP-rb-06.pdf. That Checklist references, in relevant part, the requirement that the applicant provide evidence of "Right-of-Way and Easement," "Evidence of Title to Assets," and "Opinion

---

[2] There is no dispute that at all times, the Fiedlers have known that the sewer project was fully or partially funded by the USDA. Indeed, at a Utility District meeting, Robert Fiedler made abundantly clear that he understood the role of the federal financing when he sharply questioned the Utility District attorney about compliance with the URA.

of Counsel Relative to Rights-of-Way." *Id.* at p. 8. Each of these documents, in turn, references a citation to the Code of Federal Regulations. 7 CFR 1780.44. A relevant section of the Code of Federal Regulations reads as follows:

(g)     Acquisition of land, easements, water rights, and existing facilities. Applicants are responsible for acquisition of all property rights necessary for the project and will determine that prices paid are reasonable and fair. RUS may require an appraisal by an independent appraiser or Agency employee.

(1)     Rights-of-way and easements. Applicants will obtain valid, continuous and adequate rights-of-way and easements needed for the construction, operation, and maintenance of the facility.

(i)     The applicant must provide a legal opinion relative to the title to rights-of-way and easements. Form RD 442-22, "Opinion of Counsel Relative to Rights-of-Way," may be used. When a site is for major structures such as a reservoir or pumping station and the applicant is able to obtain only a right-of-way or easement on such a site rather than a fee simple title, the applicant will furnish a title report thereon by the applicant's attorney showing ownership of the land and all mortgages or other lien defects, restrictions, or encumbrances, if any.

(ii)     For user connections funded by RUS, applicants will obtain adequate rights to construct and maintain the connection line or

> other facilities located on the user's property. This right may be obtained through formal easement or user agreements.

[10] 7 CFR 1780.44(g). In addition to these specific rules by which the applicant must abide, the URA itself is explicitly applicable to projects receiving federal financial assistance that require the acquisition of permanent and/or temporary easements. 49 CFR 24.101(c)(1).[3] As to what the URA itself does and does not require, that analysis can be made based upon the text of the law and regulations.

[11] We now turn to the specific claims raised by the Fiedlers. First, under Rule 60(B)(2), the Fiedlers argue that they are entitled to relief because of the newly-discovered evidence they received as a result of their Freedom of Information Act request. We acknowledge that they did not receive the documentation until after the conclusion of the litigation. But they could have requested this documentation long before they actually did.[4] Moreover, the "evidence" to which they direct our attention is not evidence at all. At the heart of their claim is the applicability of the URA to the Utility District; this is an issue of law that could have been answered without the documents on which they rely. We do not find that they are entitled to relief on this basis.

---

[3] The URA is adopted by the Rural Development branch of the USDA at 7 CFR Part 21.

[4] We note that much or all of this documentation could have been procured during the discovery process, had the Fiedlers requested it.

[12] Second, under Rule 60(B)(3), they contend that they are entitled to relief because of the Utility District's alleged fraud or misrepresentation. Specifically, they direct our attention to statements made by the Utility District's attorney at public meetings—the attorney stated that the Utility District was not required to comply with the URA. They also point to statements made by the attorney during a hearing before the trial court. To establish fraud under this rule, a party must show (1) a material misrepresentation of past or existing fact; (2) that was untrue; (3) that was made with knowledge of or in reckless ignorance of its falsity; (4) that was made with the intent to deceive; (5) that was rightly relied upon by the complaining party; and (6) that proximately caused the injury or damage complained of. *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005). In this case, any alleged misrepresentation was one of *law*, not of *fact*. And as stated above, the text of the relevant laws and regulations are, and always have been, publicly available. Therefore, the Fiedlers cannot be said to have reasonably relied on these statements.[5] We find no error in the trial court's denial of the motion for relief from judgment pursuant to Trial Rule 60(B).

[13] Finally, the Fiedlers argue that the trial court abused its discretion by failing to have a hearing on their motion for relief from judgment. Trial Rule 60(D)

---

[5] We acknowledge that through much of these proceedings, the Fiedlers were not represented by counsel. We sympathize with their statement that they relied on an interpretation of law made by an attorney. But it is well established that pro se litigants are held to the same standards as practicing attorneys. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 740 (Ind. Ct. App. 2014). Therefore, this argument is unavailing.

states that "the court shall hear any pertinent evidence[.]" It is well established that "where there is no 'pertinent evidence,' a hearing is unnecessary." *Benjamin v. Benjamin*, 798 N.E.2d 881, 889 (Ind. Ct. App. 2003). In this case, as noted above, the primary issue is one of law. There was no "pertinent evidence" that would have assisted the trial court in ruling on an issue of law. Therefore, we find no error in this regard.

[14] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.